GARY M. RESTAINO
United States Attorney
District of Arizona
ADAM D. ROSSI
Assistant United States Attorney
Arizona State Bar No. 028042
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone:  520-620-7300
Email: adam.rossi2@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | 4:21-CR-02855-JCH-1 |
| Plaintiff, | |
| vs. | GOVERNMENT'S OBJECTION TO THE PRESENTENCE REPORT |
| Omar Gilberto Fierros-Amaya, aka Omar Gilberto Fierros Amaya, | |
| Defendant. | |

The United States of America hereby submits the following Objection to the Presentence Report for the Court's consideration.

## I.    **Introduction**

Despite the defendant's plea agreement stipulating to a range that his attempted illegal export of a firearm and two magazines made him an "average participant" in the offense, the draft PSR recommends that the Court grant him a two-point downward adjustment for minor role. (Draft Presentence Report, hereinafter "PSR", ¶ 28.) The Court should reject this recommendation. Here, the parties' guideline agreement is rooted in common sense and in Ninth Circuit caselaw regarding the limited applicability of minor role, as a general matter and as applied to illegal firearm exporters in particular.  The concealed, illegal exportation of firearms is the goal of any illegal exporting organization and the essence of the criminal offense. By planning for and undertaking the attempted exportation of firearms, illegal exporters like defendant exemplify the average participants

in a smuggling offense, all of whom facilitate the concealed exportation of firearms from the United States and into Mexico. In these circumstances, it is not surprising that defendant agreed to guidelines as an average participant rather than seeking minor role, which would have required him to prove he was "substantially less culpable" than the other participants in the offense. And given this stipulation—and the reasons for it—there is simply no reason why the Court should adopt the contrary position in the draft PSR.

## II. Background

Here the defendant was contacted after being dropped off by a Chevy Tahoe at the port of entry in Douglas, AZ, and started walking toward the port to travel by foot to Mexico. PSR ¶ 9. The defendant gave a negative declaration, but when agents attempted to pat him down, resisted and reached to his front waistband. *Id*. Agents then placed the defendant in handcuffs, and found a FN 509 TAC 9mm handgun and two magazines in the defendant's waistband, and a U.S. Treasury check for $6,134.15 in his pocket. *Id*. Defendant Fierros-Amaya had been dropped off at the port by codefendant Chavez as the driver and codefendant Durazo as a passenger, and the two codefendants had proceeded to the outbound lanes after dropping off defendant Fierros-Amaya. PSR ¶ 10. Found in the Tahoe was a receipt for a purchase by codefendant Durazo of a FN SCAR 17S semi-automatic rifle, on October 1, 2021, for $3,554.48. *Id*. Another receipt showed codefendant Chavez purchased the same type of rifle for the same price on October 5, 2021. *Id*. Codefendant Durazo property was thereafter searched, and two additional receipts for ammunition and a firearm were recovered. PSR ¶ 11. Codefendant Durazo purchased a 500-round case of 7.62x51mm ammunition, the same ammunition utilized by the FN SCAR 17S purchased by the defendant on October 1, 2021, for $432.37. *Id*. The other receipt was for the $971.82 purchase by the defendant of the same FN 509 TAC 9mm handgun that defendant Fierros-Amaya attempted to export to Mexico. *Id*.

Additionally, codefendant Durazo admitted to purchasing five (5) FN SCAR rifles, and the handgun seized in Fierros-Amaya's possession, in the past week, and giving the money to codefendant Chavez to purchase the SCAR rifle purchased by Chavez. PSR ¶¶

16-17. One rifle and the ammunition purchased by the codefendant Durazo were seized at the home the defendants stopped at prior to proceeding to the Port of Entry. PSR ¶ 15. Agents were also able to confirm purchases of rifles by codefendant Durazo, including three (3) for $3,554.48 each, and a FN model 20S rifle for $4,646.29. PSR ¶ 18. Codefendant Durazo admitted to agents that he intended on being paid $200 for each firearm smuggled to Mexico. PSR ¶ 17.

Defendant Fierros-Amaya admitted to agents that he had been present when codefendant Chavez had purchased a firearm in a large box and left it at the residence they stopped at prior to arriving at the port. PSR ¶ 12. This defendant also admitted codefendant Durazo had purchased ammunition at the same store Durazo purchased the handgun at, and also left it at the same residence. *Id*. This defendant also admitted he attempted to smuggle the handgun and two magazines to Mexico, and also expected to be paid $200. *Id*..

On September 16, 2022, the defendant pled guilty to Count 1, Smuggling Goods From the United States.  PSR ¶ 4.  Pursuant to the plea agreement the parties stipulated to a base offense level of 26, and a three-level reduction for acceptance of responsibility, resulting in a total offense level of 23.  *See id.*, and Doc. 129. The government also agreed that the defendant's sentence shall not exceed the low end of the applicable guideline range, and that the defendant may withdraw from the plea agreement if he receives a sentence that exceeds the low end of the applicable guideline range. Doc. 129. The parties also stipulated that the defendant may not move for any adjustments in Chapters Two, Three, or Four of the Sentencing Guidelines or any "departures" from the Sentencing Guidelines, or the government may withdraw from the agreement. *Id*. Of note, the agreement also stipulates that the defendant may move for a variance, and while the government may oppose it, if the Court grants the motion, the government will not withdraw from the agreement. *Id*. Because defendant is in Criminal History Category I, the stipulated imprisonment range is 46 to 57 months imprisonment. *Id.*

In the PSR, Probation calculates the guidelines consistent with the plea agreement except that Probation disregards the parties' stipulation to the guidelines and incorrectly

assesses a two-point reduction for minor role. PSR ¶ 28. Probation also incorrectly presumes the government would accept the two-point reduction even if the Court applies minor role contrary to the terms of the agreement. *See* PSR ¶ 73. This is not so. Rather, if the Court rejects the parties' plea agreement with its stipulation, essentially, that the defendant is an "average participant", and instead assesses a minor role reduction, which the defendant is prohibited from making himself, the government will make a motion for the Court to find that it is rejecting the plea agreement.

### III. Argument

The Court should accept the parties' agreement that defendant—an illegal exporter of a firearm—is an "average participant" because such an agreement has support in the law and is grounded in reason and common sense. *See United States v. Hernandez-Franco*, 189 F.3d 1151, 1160 (9th Cir. 1999), *cert. denied*, 530 U.S. 1206 (2000) (affirming a district court's denial of minor role reduction for driver of truck containing large number of illegal aliens, even though evidence did not indicate that the driver was involved in any of the other smuggling arrangements), *overruled on other grounds by United States v. Simon*, 858 F.3d 1289 (9th Cir. 2017) (en banc); *United States v. Gomez-Hawkins*, 472 F. App'x 509, 511 (9th Cir. 2012) (unpublished) (affirming a district court's denial of a minor role adjustment for a sole driver/transporter who transported two aliens, even assuming others may well have been involved in the alien smuggling offense); *United States v. Gonzalez-Chavarin*, 15 F. App'x 537, 539 (9th Cir. 2001) (unpublished) ("Gonzalez-Chavarin did not show by a preponderance of the evidence that he, as the driver of the van, was substantially less culpable than his average co-participants, *given the importance of transportation* and the number of individuals for whom he took responsibility.") (emphasis added).

The Ninth Circuit "'has consistently stated that a downward adjustment under section 3B1.2 is to be used infrequently and only in exceptional circumstances.'" *Hernandez-Franco*, 189 F.3d at 1160 (9th Cir. 1999) (quoting *United States v. Davis*, 36 F.3d 1424, 1436 (9th Cir. 1994)). That a defendant "may be less culpable than other

participants in the crime does not necessarily entitle [a defendant] to an adjustment under section 3B1.2." *Id.* (citing *United States v. Ladum*, 141 F.3d 1328, 1348 (9th Cir. 1998)). Rather, defendant must show that he was substantially less culpable than the average co-participant. U.S.S.G. Section 3B1.2, application n. 3(A).

While the determination of whether to apply minor role is ordinarily based on the totality of circumstances and the facts of a particular case, section 3B1.2, application n. 3(C), a court should employ less scrutiny to a fact-based determination and defer to the parties' agreement and understanding of the facts and law when a defendant agrees to her "average participant" status in a particular case, especially given that the minor role adjustment should be used infrequently and only in exceptional circumstances. *See United States v. Guerrero-Avila*, No. CV 16-00545-TUC-CKJ, 2016 U.S. Dist. LEXIS 125779, at *5 (D. Ariz. Sep. 13, 2016) (a § 2255 movant was not entitled to a minor role reduction where she conceded in the plea agreement she was an "'average participant'" in the offense) (internal quotations added). Nonetheless, illegal exporters of firearms like defendant exemplify the average participants in a smuggling offense, all of whom plan for, undertake, and facilitate the concealed movement of Commerce Control List items from the United States and into Mexico. Where, as here, the parties' agreement has support in the law, and is not clearly erroneous or unconscionable, the court should defer to the parties' agreement.

Lastly, the policy of the United States Attorney's Office to generally treat illegal exporters of firearms as average participants is grounded in reason and common sense and mindful that downward adjustments for minor role should be used infrequently and only in exceptional circumstances. Suggestions that illegal exporters in illegal export organizations should be treated similarly to couriers in drug trafficking organizations (DTOs) are incorrect. The goals of DTOs are to manufacture, package, distribute, and buy/sell illegal narcotics, and transportation of the drugs from one location to another is but one aspect of their business model.

Unlike DTOs, the illegal export organizations goals and core criminal activities are

plainly the concealed export of Commerce Control List items, such as firearms and magazines. Thus, every exporter in an illegal export organization represents and exemplifies the average participant, while managers, organizers, and leaders would, of course, qualify for an aggravating role enhancement.

Notably, Probation correctly states that the defendant was present for the purchase of one FN SCAR 17S and 500 rounds of ammunition, and attempted to smuggle the FN 9 mm handgun and two magazines into Mexico. Probation correctly notes that the defendant is accountable for this relevant conduct pursuant to USSG §1B1.3(a)(1)(B). PSR ¶ 24. Therefore, this relevant conduct clearly should prevent the application of this adjustment. As the Ninth Circuit has found, "A downward adjustment under § 3B1.2 is appropriate only where a defendant's role is minor or minimal compared to other participants in the same offense or *in relevant conduct* within the meaning of U.S.S.G. § 1B1.3. *United States v. Kipp*, 10 F.3d 1463, 1468. (9th Cir. 1993) (emphasis added); *citing United States v. Webster*, 996 F.2d 209, 212 (9th Cir.1993).

Further, Probation justifies the adjustment as the defendant "exercised no decision-making authority, did not plan the activity, had limited knowledge of the overall scope of the scheme, and only stood to receive $200 for his participation" he should be given an adjustment for minor role. PSR ¶ 28. That description applies to every illegal exporter of firearms who was arrested on their first attempt, which runs afoul of the Ninth Circuit's requirement that the adjustment be applied "infrequently and only in exceptional circumstances." Importantly, the defendant admitted that this is not his first time committing such an offense, so he clearly knew the ramifications and importance of his actions. PSR ¶ 12.

## IV. Conclusion

If an exporter in a smuggling case believes the facts of his/her particular case warrants consideration for minor role, he/she is free to negotiate or reject the plea agreement and file a motion for a downward departure as appropriate. But that is not the case here. The defendant has agreed to a plea countenanced at his "average participant"

status, and agreed to the applicable guideline range. The Court should accept the parties' agreement and deny Probation's proposal to assess a minor role reduction.

The government would further note, that, based on the sentences of the codefendants, the defendant should receive a lower sentence than the codefendants to avoid unwarranted sentencing disparity. The government further agrees that the proposed sentence is appropriate, and can be applied through the variance language in the plea agreement. The government does not, however, agree that the application of a minor role adjustment, one that could be applied to nearly every first time illegal exporter the Court encounters, is the lawful way to obtain the correct result, and the adjustment should be rejected.

Respectfully submitted this 4th day of April, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Adam D. Rossi*
ADAM D. ROSSI
Assistant U.S. Attorney

Copy of the foregoing served this 4th day of April, 2023 to:

ALL ECF PARTICIPANTS